FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ FEB 10 2016 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

MICHAEL SEABROOK,

         Plaintiff,

   - against -

THE CITY OF NEW YORK, PETER LAZARE,
ERNEST KENNER, and SGT. CHRISTOPHER
MULLER,

         Defendant.

--------------------------------------------------------------- X

<u>**MEMORANDUM DECISION AND ORDER**</u>

14 Civ. 3059 (AMD) (RER)

**ANN DONNELLY**, District Judge.

  The plaintiff brought this action against the City of New York, a police sergeant, and two individual police officers for alleged violations of state and federal law, arising from the plaintiff's arrest and subsequent detention for possession of a loaded firearm. The defendants move for summary judgment. For the reasons set forth below, the motion is granted as to the plaintiff's Section 1983 claims for excessive pre-arraignment detention, pre-arraignment delay, malicious prosecution, and denial of a fair trial.[1] The defendant's motion to dismiss the plaintiff's state law claims, his excessive force claims, his assault and battery claims, and his failure to intervene claim is denied. The case is scheduled for a three-day jury trial beginning February 24, 2016.

---

[1] The Honorable Margo K. Brodie previously dismissed the plaintiff's claim against the City of New York for liability pursuant to *Monell*. (July 28, 2015 Minute Entry and Order for Proceedings Held Before Judge Margo K. Brodie). The plaintiff has represented that he would not pursue his claims of false arrest. (Pl.'s Letter to Court, Sept. 25, 2015 (ECF No. 22)).

1

## BACKGROUND

On December 18, 2013, a judge in the City Court of Canandaigua, New York issued a warrant for the plaintiff's arrest; the plaintiff was wanted for Criminal Possession of a Weapon and Reckless Endangerment. (Defs.' Ex. A ("Canandaigua Warrant")). Less than a month later, on January 15, 2014, the plaintiff was arrested in Brooklyn for possessing a loaded gun. The circumstances that led to that arrest are largely undisputed. Police officers, including the defendants Officers Peter Lazare[2] and Ernest Kenner and Sergeant Christopher Muller, responded to a radio run based on a 911 call describing a man or a group of men with a gun. When the officers observed the plaintiff on the street and tried to question him, he fled, discarding a loaded gun as he ran. Some officers chased the plaintiff, tackled him, handcuffed him, and took him to the 73rd precinct stationhouse.[3] Thereafter, a civilian brought the plaintiff's gun to the officers and showed them where he found it. They secured the weapon and brought it to the stationhouse. The gun was vouchered and sent to the ballistics laboratory to be tested.

During the processing of his arrest, the plaintiff was fingerprinted but refused to give his name. According to Sergeant Muller, in this situation an arrestee is designated a "John Doe" and kept in a cell until either he gives his name or his fingerprint results come back from Albany. The arrestee's refusal delays the arrest processing.[4]

The parties dispute what happened next. The plaintiff claims that after he refused to provide a name, several officers laughed and said that he would eventually give a name. Then, according to the plaintiff, Officer Lazare walked into the precinct, passed the plaintiff's gun to another officer with his left hand and used his right hand to "smack" the plaintiff to the ground.

---

[2] Officer Lazare has since been promoted to the rank of detective.
[3] These police officers have not been identified, though the defendant officers testified that they arrived on the scene shortly after the defendant was tackled, and they saw him again at the stationhouse.
[4] Although the plaintiff has submitted evidence indicating that there were 44 hours between his arrest and his arraignment, the plaintiff presented no evidence about how long he was actually in the precinct.

The plaintiff complains that the officers laughed, and one of the police officers claimed he had not seen anything. The parties have not submitted any testimony by Officer Lazare about this allegation nor any deposition testimony corroborating the plaintiff's account.[5]

The other point of contention is the time at which the plaintiff's weapon was determined to be inoperable. The plaintiff claims that the defendants knew the weapon was inoperable at the stationhouse, even before the gun was sent to the ballistics unit. As support for this claim, the plaintiff relies on Officer Kenner's deposition testimony about his observation of the ammunition in the plaintiff's gun. Specifically, Officer Kenner testified that he saw "strike marks" on a bullet, which indicated to him that someone had tried to fire the gun. (Kenner: 39-40). His testimony included the following exchange:

> Question: But it looked to you clear that it *could not* fire, is that true?
>
> Answer: It looked to me that it *did not* fire, which is what I told your client. I explained to him how lucky he was . . . [and] that he could very well be standing here for murder had that gun fired, and how lucky it was that it *didn't*.

(Kenner: 40-41) (emphasis added).

In addition to his exchange with the plaintiff, Officer Kenner told Sergeant Muller and Officer Lazare about his observations. None of the defendant officers test fired the weapon. For his part, Officer Lazare testified that he did not know that the gun was inoperable when he swore out the criminal complaint shortly after 1:00 p.m. on January 16, 2014. A detective in the Firearms Analysis Section analyzed the weapon on January 16, 2014, and determined that it was inoperable because of a "weak main spring" that provided "insufficient spring tension for [the]

---

[5] The plaintiff's position on this issue is somewhat puzzling. At the pre-trial hearing, plaintiff's counsel asserted that Detective Lazare "admitted" to slapping the plaintiff. In his written submission to the Court, counsel states that the officer "denie[d]" hitting the plaintiff, but "only barely."

3

hammer to strike [the] firing pin." (Pl.'s Ex. B). Officer Lazare testified that he did not learn of this finding until he went to the District Attorney's Office days later.[6]

In the meantime, on January 16, 2014, Canandaigua City Detective Nathan Lawrence learned that the plaintiff had been arrested in New York City. He called members of the Kings County District Attorney's Office and the New York Police Department to confirm the arrest and to advise them of the outstanding warrant for the plaintiff's arrest.

The plaintiff was arraigned in Brooklyn on January 17, 2014. The clerk announced that there was an arrest warrant from the Canandaigua City Court in Ontario County, and the warrant would be "lodged with the Department of Corrections and will act as a hold." (Pl.'s Ex. C).[7] The judge set bail in the amount of $20,000 insurance company bond or $20,000 cash for the Brooklyn gun case, and announced that the "Ontario County warrant will be lodged as a hold." (Pl.'s Ex. C). The case was adjourned to January 21, 2014 for action by the grand jury, and the plaintiff was held in Rikers Island.

Both Officer Lazare and Sergeant Muller were notified that they were to testify before a grand jury. When they arrived at the District Attorney's office on January 21, 2014, they were advised that the ballistics test showed that the weapon was inoperable. The assistant district attorney moved to dismiss the charges and notified Detective Lawrence of that fact on January 22, 2014. Detective Lawrence came to New York City the next day, and took the plaintiff back to Canandaigua where he was arraigned on the arrest warrant; bail was set in the amount of $25,000 cash or $50,000 bond. (Defs.' Ex. E). Because the plaintiff did not post bail until March 7, 2014, he was held in the Ontario County jail until that date. (Defs.' Exs. E and F).

---

[6] Neither party has provided evidence of the time at which the weapon was tested or when the assigned assistant district attorney received the ballistics report from the Firearms Analysis Section.
[7] In addition to the arrest warrant, the plaintiff had two open bench warrants for minor crimes; those cases were adjourned in contemplation of dismissal.

The plaintiff initiated this action on May 15, 2014.[8] His amended complaint alleges that he was falsely arrested with excessive force, assaulted, maliciously prosecuted, and excessively detained by the defendants. In July 2015, counsel for the defendants requested a pre-motion conference on an anticipated motion for summary judgment. At the July 28, 2015 hearing, Judge Brodie dismissed the plaintiff's claim against the City for liability pursuant to *Monell* as withdrawn. Following the hearing, the plaintiff's counsel informed the defendant that he was not pursuing his false arrest claims. The defendants declined to file for summary judgment, and the plaintiff requested that the case proceed.

A pretrial conference was held on January 14, 2016.[9] By the time of that conference, a different attorney from the City of New York Law Department had been assigned to represent the defendants.[10] Because the plaintiff had been held not only on the Kings County weapons possession count, but also on the Ontario County arrest warrant, I granted the defendants leave to move for summary judgement on whether the plaintiff was actually deprived of his liberty as a result of the Brooklyn arrest. For the reasons that follow, I find that he was not. Accordingly, the plaintiff's Section 1983 claims for malicious prosecution, excessive pre-arraignment detention, pre-arraignment delay, and denial of a fair trial must fail. The state law malicious prosecution claim, the state law claim of pre-arraignment delay, the Section 1983 claim for failure to intervene, and the federal and state law claims for excessive force and assault and battery survive summary judgment and remain to be tried.

---

[8] Around that time, the plaintiff asked to reschedule the 50-h hearing. (Pl.'s Ex. I). The parties agree that the 50-h hearing never occurred, as required by New York General Municipal Law §50.
[9] The case was reassigned from Judge Brodie in November of 2015.
[10] The defendants' counsel represented at the pretrial conference that the original lawyer had taken medical leave.

# DISCUSSION

A court may grant summary judgment when "the evidence . . . demonstrates that there are no genuine issues of material fact and that the judgment is warranted as a matter of law." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir.2012) (internal quotation marks, alteration, and citation omitted). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). In ruling on a motion for summary judgment I am to "resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *O'Bert ex rel. Estate of O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003).

## A. Prosecution-Related Claims

The defendants move for summary judgment on the plaintiff's Section 1983 claims of malicious prosecution, excessive pre-arraignment detention, pre-arraignment delay, and denial of a fair trial. For each of the federal constitutional injuries alleged, the plaintiff must establish a "deprivation of liberty consistent with the concept of 'seizure.'" *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (malicious prosecution); *Lopez v. City of New York*, 105 F. Supp. 3d 242, 247 (E.D.N.Y. 2015) (in order to have a cognizable claim for denial of the right to a fair trial under Section 1983, a plaintiff must establish a deprivation of liberty.); *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) (the Fourth Amendment requires a "timely judicial determination of probable cause").

It is undisputed that when the plaintiff was arrested in Brooklyn, there was also a warrant for his arrest from Ontario County. As the Kings County judge made clear, that warrant acted to "hold" the plaintiff, irrespective of the outcome of the Brooklyn case. Indeed, the plaintiff would not have been released even if case been dismissed at his arraignment because he would have been held on the out-of-county warrant.[11] That is precisely what happened after his case was dismissed on January 22, 2014; he was held until Detective Lawrence arrived to return him to Ontario County. Once there, the arraignment judge set bail, and the plaintiff was incarcerated until he made bail on March 7, 2014. He subsequently pled guilty and was sentenced to serve a state prison term, which he is currently serving. Under these circumstances, viewing the facts in the light most favorable to the plaintiff, there was no deprivation of liberty, and the plaintiff's prosecution-related Section 1983 claims must fail.[12]

The defendants also move to dismiss the state claim of malicious prosecution.[13] Under New York law, a plaintiff must prove (1) that the defendant initiated a criminal proceeding against the plaintiff; (2) that the action terminated favorably to the plaintiff; (3) there was no probable cause for the criminal charge; and (4) the defendant acted with malice. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004). The plaintiff argues that there was no probable

---

[11] Because the defendant has not moved for summary judgment on the state law claim of pre-arraignment delay on any grounds other than the non-compliance with the State's 50-h requirement, I decline to decide whether this forty-four hours between the arrest and the arraignment is reasonable as a matter of law. However, I observe that the Supreme Court has held that detentions of up to forty-eight hours generally satisfy the Fourth Amendment requirement of a prompt arraignment. *See Simmons v. Kelly*, No. 06-cv-6183-RJS, 2009 WL 857410, at *6 (S.D.N.Y. Mar. 31, 2009) (citing *County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)).

[12] The plaintiff's argument that he was denied his liberty because he was not given credit for days he was incarcerated on the Kings County case is also meritless. At the time of sentence on his Ontario County case, he could have requested that he be sentenced *nunc pro tunc* to January 15, 2014, the date of his arrest in Brooklyn.

[13] As an initial matter, the plaintiff does not dispute that he cannot state a claim for malicious prosecution against Officer Kenner or Sergeant Muller. I read the Amended Complaint to state a malicious prosecution claim against Officer Lazare because he swore out the criminal complaint.

7

cause for the criminal charge because the defendant officers knew that the gun was inoperable before Officer Lazare swore out the criminal complaint.

The plaintiff bases his argument on Officer Kenner's deposition testimony regarding his observations of the bullets in the plaintiff's gun and his conclusion that the plaintiff's gun did not fire when the plaintiff attempted to shoot it. Certainly, the content and the context of that testimony make it more plausible that the officer was not making a statement about the weapon's operability generally, but was simply pointing out that the weapon had not fired when the plaintiff tried to shoot it. After all, the officer did not test fire the weapon. Rather, the weapon and its ammunition were sent to the firearms analysis section to be tested by a trained detective. Nevertheless, that determination cannot be made as a matter of law. Accordingly, the defendant's motion for summary judgment on the state law malicious prosecution claim is denied.

## B. State Law Claims

The defendants contend that the state law claims should be dismissed because the plaintiff did not attend a 50-h hearing. However, the plaintiff requested an adjournment of the 50-h hearing because of a Jewish holiday. Under Section 50-h(5), "[i]f the claimant requests an adjournment or postponement beyond the ninety day period, the city . . . shall reschedule the hearing for the earliest possible date available." N.Y. Gen. Mun. Law § 50-h. In this case, the City did not respond to the plaintiff's request for an adjournment.

On these facts, Judge Brodie held that the plaintiff's state law claims would not be dismissed if the only basis for the defendants' motion was that there was no 50-h hearing. The plaintiff's failure to appear for a 50-h hearing does not warrant dismissal of the state law claims

in this case. Since that is the only basis for the defendants' motion, it is denied. *See Crockett v. City of New York*, No. 11-cv-4378-PKC, 2015 WL 5719737, at *13 (E.D.N.Y. Sept. 29, 2015).

### C. Excessive Force and Assault & Battery Claims

The plaintiff alleges that police officers used excessive force to apprehend him, and that Officer Lazare "smacked" him at the precinct. The defendants move to dismiss the plaintiff's excessive force claims associated with his apprehension and the failure to intervene claim related to the allegation that Officer Lazare struck the plaintiff. The facts around the plaintiff's apprehension and the subsequent events at the station are contested. I therefore deny the defendants' motion as to the excessive force, assault and battery, and failure to intervene claims.

## CONCLUSION

I grant the defendants' motion for summary judgment as to the plaintiff's Section 1983 claims for excessive pre-arraignment detention, pre-arraignment delay, malicious prosecution, and denial of a fair trial. I otherwise deny the defendants' motion.

**SO ORDERED.**

s/Ann M. Donnelly

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
February 10, 2016